UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SERAC INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 7872 |
| v. ) | Hon. Marvin E. Aspen |
| ) | |
| UNITED PACKAGING GROUP, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Serac Inc. ("Serac") filed this diversity suit against Defendant United Packaging Group, LLC ("UPG"), asserting claims of breach of contract and account stated based on an unpaid sum UPG allegedly owes Serac for the purchase of liquid filling equipment. (Compl. (Dkt. No. 1).) Presently before us is UPG's motion to dismiss Serac's complaint for improper venue or, in the alternative, to transfer venue to the Central District of California. (Mot. (Dkt. No. 19).) For the following reasons, we deny UPG's motions to dismiss and to transfer.

**BACKGROUND**

The dispute at issue in this case arose from UPG's purchase of Serac bottle filling and capping equipment. On or about February 12, 2014, Serac, an Illinois corporation with its principal place of business in Carol Stream, Illinois, prepared and issued a quote to UPG for a piece of liquid filling machinery, the Serac model LF24C12/720. (Compl. ¶¶ 1, 7; Serac Quotation # 14-030-C ("Serac Quotation") (Dkt. No. 1–1).) UPG manufactures and distributes packaging products; it is headquartered and has its sole facility in Colton, California.

(Mot. ¶¶ 1–4.)[1]  Serac's quotation included terms of sale, which stated the "quotation shall be subject to the General Terms and Conditions set forth in the enclosed attachment #12290." (Serac Quotation at 6.)  Attachment #12290 included further Terms and Conditions that apply to "all quotations made and orders accepted by Serac." (*Id.* at 8.)  Section 12.7 of the Terms and Conditions ("forum selection clause") states: "The Equipment Agreement shall be construed in accordance with, and governed by the laws of the State of Illinois, excluding the conflicts of law provisions.  Seller and Buyer agree only to jurisdiction and venue in an appropriate state or federal court in the State of Illinois." (*Id.* at 12.)  It is uncontested that UPG received the entire quotation, including the Terms and Conditions that included the forum selection clause.  (*See* Mot. ¶ 9.)

After UPG received the quotation, on February 21, 2014,[2] UPG issued a Purchase Order for the filling equipment referring to quotation #14-030-C, which Serac accepted.  (Feb. 21, 2014 Purchase Order (Dkt. No. 23–2); Compl. ¶ 9; Mot. ¶ 10.)  Serac delivered the ordered equipment and parts to UPG's California facility in 2014 and 2015, although the parties dispute the exact dates.  (Compl. ¶¶ 10–11 (indicating the deliveries were made between September 2014 and March 2015); Mot. ¶¶ 11–20 (claiming the deliveries occurred between June 2014 and April 2015).)  Serac claims that it has fully performed its obligations under the contract with UPG and that UPG owes Serac $677,304.34 for the filling equipment and related fees.  (Compl. ¶¶ 12–14.)  UPG, on the other hand, states the originally purchased 24-valve filling

---

[1] UPG is a limited liability company with two members, Lonny Hamic and Charles Soderstrom, both of whom reside in California. (Dkt. No. 19–2.)

[2] While both parties initially state that UPG first issued its Purchase Order on May 30, 2014 (Compl. ¶ 9; Mot. ¶ 10), the documentation Serac attached to its response to UPG's motion to dismiss reveals UPG placed its first Purchase Order accepting the quotation on February 21, 2014.  (*See* Feb. 21, 2014 Purchase Order; Borges Dec. (Dkt. No. 23–3) ¶ 11.) Neither party disputes that UPG issued its Purchase Order after UPG received Serac's quotation, including Serac's Terms and Conditions.  (Mot. ¶ 9.)

2

system did not meet the filling capacity Serac represented during negotiations, and that Serac upgraded the filling system to a 36-valve machine in early 2015. (Mot. ¶¶ 7–20.) UPG claims the upgraded 36-valve filling system still does not meet UPG's production requirements and fails to meet Serac's representations. (*Id.* ¶¶ 7, 19–21.) Based on UPG's dissatisfaction with Serac's filling equipment, UPG refuses to sign Serac's Final Acceptance Form. (*Id.* ¶¶ 19–22.)

On November 1, 2017, Serac filed a complaint in the Northern District of Illinois alleging breach of contract and account stated claims against UPG. (Compl. ¶¶ 6–20.) Serac claims that after an initial payment, UPG has failed to pay its remaining $448,432.74 balance owed to Serac despite repeated demands by Serac. (*Id.* ¶¶ 13, 15.)

**ANALYSIS**

UPG argues Plaintiff's lawsuit should be dismissed for improper venue because the forum selection clause in Serac's quotation does not control the instant dispute. (Mot. at 5–6.) In the alternative, UPG requests that this matter be transferred to the Central District of California because it is the "most convenient forum for the parties and witnesses to this matter" and is in the interest of justice. (*Id.* at 7–9.) In response, Serac argues the forum selection clause is binding and renders venue proper in Illinois. (Pl's Resp. to Def.'s Mot ("Resp.") (Dkt. No. 23) at 3–4.) In addition, Serac argues that transfer is inappropriate because it "would merely shift the inconvenience from one party to another, rather than eliminate it." (*Id.* at 5–7.)

**I. MOTION TO DISMISS FOR IMPROPER VENUE**

We turn first to UPG's motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). The plaintiff bears the burden of establishing venue is proper. *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 787 (N.D. Ill. 2013). When ruling on a 12(b)(3) motion to dismiss, we take all allegations in the complaint as true, unless

3

contradicted by an affidavit, and we can consider facts outside the complaint. *Nagel v. ADM Inv'r Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998).

UPG's sole argument for dismissal under Rule 12(b)(3) is that venue is improper in our district because UPG did not agree to the forum selection clause in Serac's quotation. (Mot. at 4–7.) However, the Supreme Court clarified in a unanimous opinion that "Rule 12(b)(3) allow[s] dismissal only when venue is 'wrong' or 'improper,'" which "depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 134 S. Ct. 568, 577 (2013). Accordingly, "[w]hether the parties entered into a contract containing forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in [28 U.S.C.] § 1391(b)." *Id.*

We thus analyze UPG's motion to dismiss for improper venue under § 1391 without reference to the disputed forum selection clause. Section 1391(b) dictates that a civil case can be properly brought in a judicial district where: (1) "any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "if there is no district in which an action may otherwise be brought as provided in this section," where any defendant is subject to the court's personal jurisdiction. 28 U.S.C. § 1391(b). Notably, UPG does not argue that venue is improper based on § 1391. (Mot. at 5–7.)

In this instance, § 1391(b)(2) provides a basis for venue because a substantial part of the events giving rise to the Serac's claims occurred in the Northern District of Illinois. Serac

4

negotiated with UPG through its headquarters in Carol Stream, Illinois. (Resp. at 2.) UPG sent its purchase orders to Serac's Illinois headquarters, and in May 2014, UPG's member Tom Hamic visited Serac's facilities to inspect and examine the filling equipment. (*Id.* at 2–3.) Serac also designed and manufactured the filling machine in Carol Stream, Illinois. (*Id.* at 6.) Because Serac performed virtually all of its obligations under the contract in this district, we find venue in this district is proper under § 1391(b)(2). *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, No. 07 C 1394, 2008 WL 5423553, at *3 (N.D. Ill. Dec. 29, 2008) ("Where the underlying events [in a contract action] are essentially communications made by two parties located in separate districts, '[t]he requirements of [§ 1391(b)(2)] may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action.'") (citing *Interlease Aviation Inv'rs II (Aloha) LLC v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003)). UPG's contacts with the Central District of California do not render venue improper in Illinois. *See Caldera Pharms., Inc. v. Los Alamos Nat. Sec., LLC*, 844 F. Supp. 2d 926, 929 (N.D. Ill. 2012) ("If the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so.") (citing *Chem. Waste Mgmt. v. Sims*, 870 F. Supp. 870, 875 (N.D. Ill. 1994)); *TruServ Corp. v. Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998) ("The test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district."). We accordingly find venue proper and deny UPG's motion to dismiss.

## II. MOTION TO TRANSFER

We turn next to UPG's motion to transfer to the Central District of California. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C.A. § 1404; *see Research Automation, Inc. v. Schrader–Bridgeport Int'l., Inc.,* 626 F.3d 973, 977 (7th Cir. 2010) ("[Section 1404(a)] allow[s] a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district."). "The movant . . . has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). Transferring a case is within the "sound discretion" of a trial court. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000).

The presence of a forum selection clause dramatically impacts the analysis of a motion to transfer. *Atlantic Marine* made clear that "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis." *Atl. Marine*, 571 U.S. 49, 134 S. Ct. at 581. Accordingly, before continuing the § 1404(a) analysis, we first determine whether the forum selection clause binds the parties in this dispute.

### 1. Enforceability of Forum Selection Clause

District courts apply the substantive law of the forum state when sitting in diversity. *Liu v. T & H Mach., Inc.,* 191 F.3d 790, 795 (7th Cir. 1999); *AGA S'holders, LLC v. CSK Auto, Inc.*, 467 F. Supp. 2d 834, 843 (N.D. Ill. 2006). Accordingly, we apply Illinois law to determine whether a contract exists between the parties and whether the contract contains an enforceable venue selection clause.

We find the venue selection clause to be a definite term of Sepac's offer and thus, it is a term of the contract entered into by the parties. In Illinois, a binding contract must contain an offer, acceptance, consideration, and reasonably certain terms. *Van Der Molen v. Wash, Mut. Fin., Inc.,* 359 Ill. App. 3d 813, 824, 835 N.E.2d 61, 69 (1st Dist. 2005); *DiLorenzo v. Valve & Primer Corp.,* 347 Ill. App. 3d 194, 200, 807 N.E.2d 673, 678 (1st Dist. 2004). Here, Sepac's February 12, 2014 quotation, which included Sepac's terms and conditions, operated as an offer that UPG then accepted when it placed its February 21, 2014 purchase order. *See Ace Am. Ins. Co. v. Wendt, LLP*, 724 F. Supp. 2d 899, 902 (N.D. Ill. 2010) (finding a "sufficiently detailed" price quotation can constitute an offer when the quotation includes "more than a mere price quote and includes more than insignificant detail about the terms of the project") (citing *McCarty v. Verson Allsteel Press Co.*, 89 Ill. App. 3d 498, 506–07, 411 N.E.2d 936, 942 (1st Dist. 1980)). UPG admits that it received the terms and conditions as part of Sepac's quotation, and UPG's purchase order explicitly references the quotation without any objection to the forum selection clause or any other term of the quotation. (Feb. 21, 2014 Purchase Order (including the text "SEE QUOTE #14-030-C").) *See also Mfg. & Mktg. Concepts, Inc. v. S. Cal. Carbide*, 920 F. Supp. 116, 118-19 (N.D. Ill. 1996) (finding forum selection clause listed in terms and conditions of purchase orders applied to sale when other party undoubtedly received the terms and conditions and "did not reject" the orders or the terms and conditions). UPG's failure to object to the terms of Sepac's offer at the time it accepted the quotation either in writing on its Purchase Order or during negotiations with Serac means the terms of Sepac's quotation became the terms of the contract of sale. (*See* Borges Decl. ¶ 10.) *See also Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 253 (7th Cir. 1996) ("As for the claim in [defendant's president's] affidavit that the terms of the Purchase Order Documents were

7

unacceptable, [defendant] has failed to present any evidence that it had any concerns or expressed any objection to [plaintiff] regarding the forum selection clause or any other provision contained in the General Notes and Conditions.") By issuing a Purchase Order after receiving a quotation that explicitly stated subsequent sales would be bound by the venue selection clause, UPG assented to the terms of the quotation. *See Li Gear, Inc. v. Kerr Mach. Co.*, No. 16 C 4657, 2017 WL 432931, at *5 (N.D. Ill. Feb. 1, 2017) (slip op.) (concluding forum selection clause in seller's terms and conditions included as part of seller's quotation became part of the contract when buyer issued a purchase order accepting seller's quotation). The forum selection clause thus operates as a term of the agreement and governs the present dispute.

We disagree that terms of an offer only become binding when a signed acceptance explicitly incorporates the terms and conditions of the offer. (Def.'s Reply to Mot. to Dismiss ("Reply") (Dkt. No. 27) at 1.) "It is well settled that a party named in a contract may, by his acts and conduct, indicate his assent to its terms and become bound by its provisions even though he has not signed it." *Landmark Props., Inc. v. Architects Int'l-Chi.*, 172 Ill. App. 3d 379, 383, 526 N.E.2d 603, 606 (1st Dist. 1988). Indeed, because UPG does not dispute it received the venue selection clause as part of the Terms and Conditions of the quotation, UPG accepted the terms through its issuance of a Purchase Order and initial repayments to Serac. *See Compass Envtl., Inc. v. Polu Kai Servs., LLC*, 379 Ill. App. 3d 549, 554, 882 N.E.2d 1149, 1155–56 (1st Dist. 2008) (finding seller accepted the terms and conditions attached to a purchase order, including a forum selection clause, when it began performance under the contract); *see also Roberts & Schaefer Co.*, 99 F.3d at 252 (finding forum selection clause in General Notes and Conditions attached to purchase order was part of the contract based on offeree's performance under the contract despite documents being unsigned). If UPG wished to exclude the forum

selection clause from its contract with Serac, it should have further inquired about the forum selection clause, issued a Purchase Order explicitly disclaiming the forum selection clause, or refused to perform under the contract until the terms were clarified. *Compass Envtl.*, 379 Ill. App. 3d at 554, 882 N.E.2d at 1155–56.

UPG also argues that § 1 of the Terms and Conditions requires the parties' signatures before the quotations' terms and conditions become binding. (Reply at 1–2.) Section 1 states: "An order is deemed placed and accepted when the Equipment Agreement that incorporates Seller's Quotation and these Terms and Conditions ('Equipment Agreement') is executed by Seller and Buyer and Seller has received Buyer's payment of the first installment of the Total Price set forth in the Quotation." (Serac Quotation at 8.) Execution of a contract does not require a signature when the parties' performance indicates they intended to be bound by the agreement. *AGA S'holders*, 467 F. Supp. 2d at 845 ("The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, as, for example, by acts or conduct of the parties.") (citing *Lynge v. Kunstmann*, 94 Ill. App. 3d 689, 694, 418 N.E.2d 1140, 1144 (2d Dist. 1981)). It is clear that both parties intended to be bound by the quotation, and that the requirements of § 1 were met. Here UPG, the buyer, issued a Purchase Order specifically referencing the quotation. (Feb. 21, 2014 Purchase Order.) Both UPG and Serac then began performance under the contract, including Serac's manufacture and delivery of the equipment and parts ordered by UPG, and UPG's initial payment based on Serac's invoices. (Compl. ¶¶ 9–13.) Both parties' subsequent performance under the terms of the quotation satisfies the "execution" requirement of § 1 without the parties' signatures.

Any alleged ongoing failures by Serac to provide adequately performing filling equipment are irrelevant to UPG's initial acceptance of Serac's offer in 2014. UPG seems to

9

confuse acceptance of Serac's offer with refusal to accept the contracted goods, namely Serac's equipment. UPG argues its "unresolved objections" to the filling equipment Serac delivered and its refusal to sign Serac's Final Acceptance Form "preclude" Serac from arguing UPG is bound by the forum selection clause. (Mot. at 5.) As established above, UPG accepted the terms of Serac's quotation when it issued a Purchase Order on February 21, 2014 based on the terms of Serac's quotation. Any complaint UPG now has with Serac's inability to meet its obligations involves performance and breach of contract, not acceptance of the terms of Serac's initial offer.

### 2. Section 1404(a) Analysis

We now determine whether to transfer this case to the Central District of California in light of the parties' binding forum selection clause deeming Illinois as the only appropriate jurisdiction. The Supreme Court held in *Atlantic Marine* that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. 49, 134 S. Ct. at 582 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17–18, 92 S. Ct. 1907, 1917 (1972) ("Whatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting.")). We accordingly can only consider arguments about "public-interest factors," which has the "practical result" that "forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. 49, 134 S. Ct. at 582 (stating it will "not be common" that public-interest factors outweigh a forum-selection clause). We accordingly do not consider any of UPG's arguments that the Central District of California is more convenient for the parties. (Mot. at 7–8.)

Here, the public interest factors involved in the requested transfer do not clearly favor California and thus fail to counterbalance the significant weight of the forum selection clause. In analyzing a motion to change venue, we consider the "interest of justice" or "public interest factors," which "relate to the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in [a particular] locale." *Methode Elecs., Inc. v. Delphi Auto. Sys. LLC*, 639 F. Supp. 2d 903, 907 (N.D. Ill. 2009) (citing *Sitrick v. Dreamworks LLC*, No. 02 C 8403, 2003 WL 21147898, at *2 (N.D. Ill. May 14, 2003)).

Serac correctly argues that the familiarity factor weighs against transfer. (Resp. at 6–7.) In this case, we will apply Illinois substantive law based on the choice-of-law provision of the parties' contract. (Serac Quotation at 12.) Federal courts sitting in Illinois are more familiar with Illinois law than courts in California, and it will accordingly be more efficient to try the diversity case in Illinois. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986) ("In a diversity action it is also considered advantageous to have federal judges try a case who are familiar with the applicable state law."); *Bull v. Ill. Union Ins. Co.*, No. 16 C 11446, 2017 WL 3234374, at *6 (N.D. Ill. July 31, 2017) (slip op.) (finding federal judges to be more familiar with the law of the state in which they sit). On the other hand, the speed to trial factor slightly favors transfer to California. UPC argues that federal court management statistics indicate the Central District of California more quickly resolves its caseload based on average time to trial[3] and percent of pending cases over three years old.[4] (Mot. at 9.) UPG fails to note,

---

[3] As of September 30, 2017, cases filed in the Central District of California took about 18.9 months from filing to trial, while cases filed in the Northern District of Illinois took about 36.8 months. United States Courts, *United States District Courts—National Judicial Caseload Profile* (last visited Mar. 14, 2018), *available at* http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2017.pdf.

11

however, the time from filing a civil case to disposition, which is only 3.5 months faster in the Central District of California than the Northern District of Illinois. *United States Courts*, supra note 3; *see also Vandeveld v. Christoph*, 877 F. Supp. 1160, 1169 (N.D. Ill. 1995) ("Of the numerous court management statistics available, two statistics—the median number of months from filing to disposition of civil cases, and the median number of months from issue to trial in civil cases—bear the most relevance to this analysis."). The discrepancy between speed to trial and disposition suggests that the parties might resolve the case faster in California, which slightly favors transfer. Finally, as the controversy in this case involves parties in both Illinois and California, the districts' interests in resolving the dispute does not weigh for or against transfer. *Bull*, 2017 WL 3234374 at *6. While Illinois has an interest in enforcing a contract involving an Illinois corporation, California has an equal interest in interpreting the rights of a California LLC under the parties' contract. *Id.*; *Doage v. Bd. of Regents*, 950 F. Supp. 258, 262 (N.D. Ill. 1997) ("Resolving litigated controversies in their locale is a desirable goal of the federal courts.").

On balance, the interests of justice neither favor nor disfavor transfer to California, and UPG has not met its burden of establishing the "unusual case[]" where the public interest factors outweigh the clause selecting Illinois as the exclusive forum. *Atl. Marine*, 571 U.S. 49, 134 S. Ct. at 583 ("When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. . . . In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain."). We accordingly deny UPG's motion to transfer

---

[4] As of September 30, 2017, 5.6% of pending cases in the Central District of California were over three years old, compared to 10.5% in the Northern District of Illinois. *Id.*

## CONCLUSION

For the aforementioned reasons, we deny UPG's motions to dismiss and to transfer. It is so ordered.

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　Honorable Marvin E. Aspen
　　　　　　　　　　　　　　　　　　　　　United States District Judge

Dated: March 26, 2018
　　　　 Chicago, Illinois